HARDY, Judge.
This is a suit for the recovery of damages for personal injuries and property damages to plaintiff’s automobile which resulted from a collision with a dump truck on U. S. Highway No. 65 near the Town of Lake Providence in East Carroll Parish. Made defendants were Vail Delony and Howard C. White, d/b/a White & Delony, and their liability insurer, Great American Indemnity Company. From judgment rejecting plaintiff’s demands he has prosecuted this appeal.
The accident occurred at or about 3:00 o’clock P.M. on September 23, 1953. Plaintiff, driving a 1952 Plymouth Fordor Sedan, was proceeding south on U. S. Highway No. 65 at a speed of approximately 60 miles per hour, following a 1949 Ford two-ton dump truck driven by one Leroy Famula, an employee of White & Delony. The truck was proceeding at a very slow rate of speed, estimated at from 10 to 15 miles per hour, and plaintiff pulled into the left, or east, lane of the highway for the purpose of passing the truck when the latter vehicle turned suddenly and sharply to its left in front of plaintiff’s approaching automobile. Plaintiff applied the brakes of his car, at the same time turning to the right, and the car skidded some 120 feet before colliding with the left rear of defendant’s truck at or about the center of the highway. Plaintiff was thrown from his car to the pavement by the force of the impact and the car proceeded, out of control, before coming to a stop some 156 feet south of the point of collision on the west portion of the highway and the shoulder adjacent thereto. In our opinion the above facts are so conclusively established by the testimony in the record that we deem it unnecessary to indulge in any detailed discussion of the evidence with reference thereto.
Plaintiff miraculously escaped serious injury, suffering only some abrasions and lacerations of the left knee, minor bruises of the arm and slight lacerations of the face and head. He was treated at' the Terral Clinic in Lake Providence, suffered considerable pain and discomfort for some 48 hours, but sustained no lasting physical disability. • Plaintiff’s automobile did not fare so well, and was'rendered practically a total loss, the damage being estim '-.ed at somewhere in the neighborhood of $1,400 to $1,500. It was testified that the automobile could have been restored to operating condition by an expenditure of $800 or $900, but it is clear that this condition would have been thoroughly unsatisfactory.
Plaintiff alleged’ that Famula,.the driver of defendant’s truck, was guilty in failing to keep a proper lookout and to observe the approach of plaintiff’s following automobile before attempting to execute a sharp left-hand turn across the highway, and, further, *467 in failing to give any signal or warning of' his contemplated left turn.
The answer of. defendants, denying any negligence on the part of the truck driver, affirmatively alleged that Famula had given, a left turn signal by extending his arm out of the cab of the truck for a distance of approximately 100 feet before reaching the intersection. The answer further averred that the accident was the direct and proximate result of the negligence of plaintiff in driving his car at' an excessive rate of speed; following the preceding truck at too close a distance and failing to have his car under proper control. Alternatively, defendants pled contributory negligence on the part of plaintiff, specifically on grounds of excessive speed; failing to have his car under control; failing to slow down when he saw, or should have seen, the truck preparing to make a left .turn, and failing to heed the signal given by the truck driver.'
.The district judge in assigning reasons for his judgment found Famula to have been, guilty of gross negligence in attempting to negotiate a left tu.rn under the existing circumstances, but further concluded that' plaintiff’s failure to sound his horn, as required by LSA-R.S. 32:233, constituted contributory negligence arid barred .his recovery.
We confess we are somewhat, puzzled with refererice to the issue as to whether-plaintiff sounded his horn before prepar-: ing to pass the-truck. Repeated examina-.-tipri of the pleadings fails tó disclose any indication as to the raising of this issue. Defendant’s answer contains six somewhat detailed specifications of the grounds.allegedly coristituting contributory negligence'on the -part of plaintiff, which we have briefly set forth above. It is. to be observed that none of -these specifications charge failure to cotnply with the. statutory .requirement' with respect to the sounding’-of-a horn. Thorough examination and re-examinatiori, of the testimony discloses only one refer-' ence to this point. In-the direct examina-tion of Famula, the truck driver, defendant’s counsel asked the following question, to which he received the answer set forth:
“Q. Did you hear him before the time blow his horn or otherwise make any signal to you he was about to pass ?
A. No, sir, I didn’t hear any horn whatsoever.”
The above is the only reference bearing upon this factual issue. Despite the findings of the Judge ad hoc on the issue of contributory negligence, to which we have above called attention, we are impressed •with -the fact that Famula did not testify that plaintiff did not sound his horn but only testified that he did not hear it. Neither plaintiff nor his wife were interrogated by counsel for either plaintiff or defendants on this point. Notwithstanding all this, a considerable portion of counsel’s arguments' and briefs have been devoted to this issue.
Under the circumstances we think the finding of the Judge ad hoc was erroneous. In the first place, we question whether the single reference to the blowing of the horn, as above made, is sufficient to justify a conclusive finding. Second, we doubt the correctness of a finding of contributory negligence predicated upon a point which has not been raised by the pleadings. It might b.e urged that the pleadings have been enlarged by the above testimony which was-received without objection, but we do not think that such enlargement, if, indeed, it can be considered to exist, has been ’ sufficient in nature of degree to establish the existence of a factual circumstance upon which the judgment in this case should be permitted to rest.
As to the finding of gross negligence on the part of Famula, the driver of the truck, we think the testimony overwhelmingly sustains this conclusion. Despite the fact that Famula testified that he gave a hand .signal by extending his left arm from the truck of the cab, his testimony on this point is not convincing and, additionally, he admits in his testimony that he withdrew *468 his arm in order to use both hands for the purpose of turning the truck. Famula testified, specifically, that he stuck his arm out of the cab about as far as was possible, but qualified this by stating that he could not get his arm out of the window of the dump truck “too far”. We think, even if it be conceded that Famula attempted to give an arm signal prior to making his turn, it is not shown that such signal could have been observed by the driver of the following car. Further, Famula’s testimony that he made observation in his rear view mirror before signaling for the turn and did not observe plaintiff’s overtaking automobile is either unworthy of belief or clearly indicates that he was negligent in not seeing that which could and should have been observed. Under either of these alternative conclusions Famula must be convicted of negligence. It was further established by his own testimony that he did not begin to turn his truck until he was within ten feet of the gravel road which made a “T” intersection with the highway from the east, and it follows that the movement was most abrupt and involved practically a 90-degree turn of his truck. Finally, evidence introduced on behalf of plaintiff establishes the fact that Famula was charged with reckless driving by the State Trooper who investigated the accident; that upon arraignment he pled guilty and was sentenced to pay a fine of $25.
Counsel for defendants make considerable capital of the fact that neither plaintiff nor his wife were tendered as witnesses on behalf of plaintiff in presentation of his case. It is urged in connection with this circumstance that written statements, signed by both plaintiff and his wife some 24 hours, more or less, following the accident, were completely false in their narrative of the facts in connection with the accident.
With reference to the first of these propositions, we are unable to draw any conclusion which would prejudice plaintiff’s case from the-circumstance that neither he nor his wife was placed on the witness stand in presentation of his case in chief. Both plaintiff and his wife were present in court and plaintiff was thoroughly examined by defendant under cross-examination, following which he was examined by his own counsel. Mrs. Crimi was tendered as a witness for defendants and her testimony conclusively discloses that she knew little, if anything, about the circumstances of the accident.
Secondly, it is true that the statements given by plaintiff and his wife, which were written by an insurance adjuster in the office of plaintiff’s counsel and signed by the parties, are completely at variance with the established facts. In his signed statement plaintiff declared that he was following the dump truck in the west lane of the highway as both vehicles proceeded south; that the driver of the truck made an abrupt left turn, whereupon plaintiff applied his brakes and turned to the right in an unsuccessful effort to avoid the collision. This version of the accident is palpably incorrect. On trial of the case the real facts were established by the positive testimony of a State Trooper, Mr. John House, who reached the scene of the accident some 20 minutes after its occurrence. According to the testimony of this witness the true story was clearly established by his observation of the physical circumstances. Mr. House testified that the skidmarks of the plaintiff’s automobile began at a point 120 feet north of the point of impact; that these marks were visible in the east or passing lane of the highway, turning to the right and across the center line to the point approximately in the center of the highway, or just to the west thereof, where the impact occurred; that plaintiff’s Plymouth automobile continued, out of control, on its course westerly across the highway to the location where it finally came to rest 156 feet south of the point of collision. Meantime, of course, plaintiff had been thrown from the car, which came to a stop solely through its loss of momentum.
*469 On trial, under cross-examination by defendants’ counsel, plaintiff completely repudiated his written statement and testified that he had pulled into the east lane with the intention of passing the slowly moving truck; that, without any apparent signal, the truck turned sharply to the left across the east lane of the highway, whereupon he began application of the brakes of his car, at the same time turning to the right. Plaintiff attempted to explain his erroneous statement on the ground of confusion, shock and a generally dazed condition induced by failure to sleep the night of the accident. It further appears from plaintiff’s testimony that, in part, his confusion was attributable to the fact that he and his wife had been married only a few days prior to the accident and were on their honeymoon at the time. Unquestionably, he was worried about the effects of the accident, possible shortage of funds, and the complete loss of his car. Mrs. Crimi offered no explanation aside from the fact that she simply accepted her husband’s story, feeling that he was in a better position to give the facts.
Under the circumstances we cannot find that the variance between the signed statements and the testimony of these parties has any particular bearing upon the resolution of this case. At the very worst, the only effect would be to render completely unacceptable the testimony given by the parties themselves on trial of the case. The testimony of plaintiff and his wife can be completely eliminated, together with the statements which they made the day following the accident, without in any manner, or degree, affecting the facts in connection with the accident, which facts are preponderantly established by the testimony of other witnesses.
Nor do we think any prejudicial conclusion can be drawn from the failure of plaintiff or his wife to testify in plaintiff’s case in chief. The testimony of these witnesses is in the record, for what it is worth, if anything, but even if it were not, the result would be the same.
It is our firm conclusion that the gross negligence of the truck driver, Famula, was the direct and proximate cause of the accident. Defendants’ charges of contributory negligence against plaintiff are not substantiated by the testimony. It follows that plaintiff is entitled to judgment.
There is not a great deal of room for dispute as to the quantum of damages. The testimony of the Plymouth automobile dealer in Lake Providence, Mr. Robert A. Rentz, established the value of plaintiff’s car as of the time of the accident at between $1,400 and $1,500, and this estimate is not controverted by any other testimony. It was stipulated that plaintiff paid a bill for medical expenses in the sum of $30. The only other item of damage which could be considered would be the allowance of an admittedly nominal sum for pain and suffering. We think an amount of $150 should be considered adequate under the circumstances.
For the reasons assigned the judgment appealed from is reversed and set aside and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, Joseph F. Crimi, and against the defendants, Vail Delony and Howard C. White, d/b/a White & Delony, and Great American Indemnity Company, in solido, for the full sum of $1,630, with legal interest thereon from date of judicial demand until paid, and for all costs.